No. 72,196

In the Matter of DOROTHY GERSHATER, *Respondent*.
(886 P.2d 343)

Opinion filed December 9, 1994.

*Marty M. Snyder*, deputy disciplinary administrator, argued the cause, and *Bruce E. Miller*, disciplinary administrator, was with her on the formal complaint for the petitioner.

*Donald G. Strole*, of Lawrence, argued the cause for the respondent, and respondent appeared pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Dorothy Gershater, of Lawrence, an attorney admitted to the practice of law in Kansas.

This action arises out of the conduct of Dorothy Gershater in a civil action based on a landlord-tenant dispute in the District Court of Douglas County, Kansas. On October 19, 1991, attorney Andrew Ramirez filed a civil action on behalf of his client, R. Mike McBride d/b/a Mackenzie Place Apartments, against two former tenants, Marc Lee and Bryon Frick. Dorothy Gershater, the respondent, represented the defendants Marc Lee and Bryon Frick in the above action. The subject matter of this disciplinary proceeding arises out of her representation in the Douglas County action.

The matter was heard before a panel of the Kansas Board for Discipline of Attorneys. At that hearing, the Disciplinary Administrator presented evidence for the complainant and advised that the parties had stipulated to the complaint through the filing of an answer by the respondent and stipulations by the respondent. Exhibits were offered and admitted without objection.

The hearing panel unanimously found as follows:

"1. Respondent Dorothy Gershater is an attorney at law, Kansas Attorney Registration No. 11969. Her last registration address with the Clerk of the Appellate Courts of Kansas is 932 Massachusetts St., Lawrence, KS 66044.

"2. On October 19, 1991, attorney Andrew Ramirez filed a civil action based on a landlord tenant dispute in the District Court of Douglas County, Kansas,

on behalf of his client, R. Mike McBride d/b/a Mackenzie Place Apartments against two (2) former tenants, Marc Lee and Bryon Frick.

"3. The defendants were duly served, and on November 15, 1991, their joint "Answer and Counterpetition" [sic] was filed by Respondent Dorothy Gershater, attorney for defendants.

"4. A pretrial conference was conducted March 2, 1992, at which time trial was set for April 1, 1992, at 9:00 o'clock a.m. Both counsel and Judge James Paddock were present for the conference. Mr. Ramirez prepared the Pretrial Order and submitted it to Respondent Dorothy Gershater for approval. She failed to respond, and the Order was subsequently approved and entered by the Court [Exhibit A].

"5. On April 1, 1992, Respondent Dorothy Gershater and her clients failed to appear for trial. After waiting for one and one-half (1½) hours, Mr. Ramirez described his attempts to reach Respondent during the previous week and that he had been informed by her answering service that she was on vacation until April 1, 1992. Both Mr. Ramirez and Judge Paddock stated they had received vague telephone messages earlier the morning of trial from an answering service that Respondent was having some tests run that morning at the local hospital.

"6. Judge Paddock made a record finding no evidence of a medical emergency had been presented to him, and he proceeded to receive plaintiff's evidence [Exhibit B]. Judgment was entered on behalf of plaintiff, and defendant's Counterclaim was denied [Exhibit C].

"7. Respondent Dorothy Gershater claims a letter was sent March 2, 1992, advising her clients of the third-up trial setting April 1, 1992, [Exhibit D]. Mr. Lee and Mr. Frick deny receiving any notice of the trial or of any offers and counter offers [Exhibit E], and Respondent admits she did nothing to prepare them prior to trial. She claims surprise that her clients did not appear for trial on April 1, 1992.

"8. Upon receiving notice of the judgment, Respondent Dorothy Gershater, on April 4, 1992, [incorrectly shown as March 4, 1992] sent a letter to her clients accusing the judge and opposing attorney of 'outrageous behavior' and 'unethical' behavior and stating that a second trial 'would be in front of the same judge, so you may not get a fair hearing' [Exhibit F].

"9. In May, 1992, Respondent prepared a Motion to Vacate Judgment, which was never filed. When her clients' wages were garnished, they found other counsel who arranged a payment schedule in lieu of garnishment.

"10. The respondent left a message on her answer machine advising that she was not available on April 1 for trial since she was in the hospital receiving medical tests. In Respondent's testimony she admitted that that was not true, that she was not in the hospital on the morning of April 1, the trial date, and that the tests that she had been referring to on her telephone answering service had been performed some time previously. Respondent's testimony on page 29 line 4 of the transcript states 'the fact of the matter is that the tests themselves

were actually done before that, so there was really no reason for me not to show up at trial. They were already taken care of.' "

Based on the above findings, the panel entered the following conclusions of law:

"Based upon the stipulations of fact and evidence presented to the panel in the nature of respondent's testimony, the panel finds that the respondent has violated by clear and convincing evidence, [the] following disciplinary rules, to wit:

"A. MRPC 1.1 Competence: In that Respondent failed to provide competent representation to her client and failed to be prepared for the representation.

"B. MRPC 1.3 Diligence: In that Respondent failed to act with reasonable diligence and promptness in representing the client.

"C. MRPC 1.4 Communication: In that Respondent failed to keep her clients reasonably informed about the status of their lawsuit.

"D. MRPC 3.3 Candor towards the tribunal (a)(1) in that Respondent made a false statement to the court, not in trial of the matter but as an excuse for not being present at the trial which statement was false.

"E. MRPC 3.4(c) by knowingly disobeying an obligation to the court.

"F. MRPC 3.5(d) Impartiality and decorum of the tribunal by the comment in Respondent's letter dated March 4 which really should have been April 4 degrading the actions of the trial judge.

"G. MRPC 4.1 Truthfulness in statements to others by Respondent's message to plaintiff's attorney Andrew Ramirez that she was unavailable for trial because of her hospital tests, which of course was untrue.

"H. MRPC 8.2 Judicial and Legal Officials (a) — Again Respondent's letter to her clients dated March 4 [Disciplinary Administrator Exhibit F].

"I. MRPC 8.4(c and d) Misconduct (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation which of course was the message left by respondent on her answering machine that she was unavailable for trial having been in the hospital for tests which was a bald faced lie and of course (engaging in conduct that is prejudicial to administration of justice) for the same reason."

In mitigation, the panel found no evidence to indicate a pattern of misconduct or multiple offenses on the part of the respondent. Additionally, the panel concluded that there was no evidence that the respondent obstructed the disciplinary proceedings and that the respondent was forthright in her relation to the disciplinary proceedings and cooperated at all times. Further mitigating circumstances considered by the panel included a letter from attorney William B. Pendleton, who stated that in his opinion the respondent was a thoroughly competent attorney.

In aggravation, the panel found that one prior disciplinary offense against the respondent existed, which offense resulted in an informal admonition. Additionally, the panel found that the respondent demonstrated an almost complete lack of remorse to the extent that she failed to understand that lying to a court is a very serious offense.

The panel adopted the recommendation of the Disciplinary Administrator that the respondent, Dorothy Gershater, be censured by publication. In adopting this recommendation, the panel referred to the ABA Standards for Imposing Lawyer Sanctions (1991). The panel referred to Standard 5.13, calling for a reprimand when a lawyer knowingly engages in *other* conduct that involves dishonesty, fraud, deceit, or misrepresentation and that adversely reflects on the lawyer's fitness to practice law. The panel also cited Standard 6.23, which calls for a reprimand when a lawyer *negligently* fails to comply with a court order or rule and causes injury or potential injury to a client or other party or causes interference or potential interference with a legal proceeding. Finally, the panel cites Standard 7.3, calling for a reprimand when a lawyer *negligently* engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or to the legal system.

We have considered the facts and conclusions of the panel and note that the respondent has filed no exceptions to the report, findings, and recommendations of the panel. Upon our consideration of the findings and conclusions, we believe that the recommended discipline by the panel is inappropriate. We find it is inappropriate because it fails to reflect the serious nature of the violations in this case. Instead, we believe that a one-year suspension from the practice of law more appropriately reflects the nature of the violations in this case. A minority of the court believes the harsher penalty of indefinite suspension from the practice of law would be more appropriate.

The Standards relied upon by the panel in recommending discipline more or less involved negligent conduct by an attorney. While Standard 5.13 does suggest intentional conduct adversely reflecting upon a lawyer's fitness to practice, the comments of

this section generally include conduct related to, but not directly involved in, the practice of law. In this case, the respondent failed to appear for a trial setting that she knew about, lied to the court and counsel about her reasons for not appearing, and in the following letter to her clients attempted to blame the trial judge and opposing attorney for the default judgment entered against her clients:

"Dear Marc and Bryon,

"This past Wednesday, April 1, I was in the hospital and not available to try the case in court. Although I had notified both the judge and the opposing attorney, nevertheless, the Judge went ahead and heard evidence anyway, and gave the other side a judgment, which I have enclosed.

"Fortunately, there is a remedy for this outrageous behavior. K.S.A. 60-259 and 60-260 permit me to file motions to amend or alter the judgment. If the Court grants such a motion, we would then have another trial. There are two disadvantages to this: first, it will increase the amount of money you'll have to pay in legal fees, and secondly, the trial would be in front of the same judge, so you may not get a fair hearing.

"Another option you have: there are ways to legally avoid paying a judgment, without filing any further motions. Let's discuss the collections process, and what you can do to protect yourself. Call me and we'll talk about this. I suggest that you both move your bank accounts from the institution which had the accounts at the time you lived at MacKenzie place, if you have not already done so.

"I want both of you to clearly understand that although this behavior by the Judge and opposing attorney was unethical, we do have some options to remedy the situation. Would each of you please call me next week, so that a course of action can be chosen?

"Sincerely,

"Dorothy

"DG/ab

"encl."

Before the panel and in her statement to this court, the respondent admitted that her hospital tests were completed before her calls to the court and counsel so that "there was really no reason for me not to show up at trial."

The respondent's actions, in our opinion, may not be characterized as negligent. Her actions were intentional and involved misrepresentation to the district court judge and opposing counsel in the trial of a lawsuit. Her actions could not be more closely connected with the practice of her profession.

In order to explain her actions for not appearing for trial, she again lied to her clients and blamed the district court judge and opposing counsel for what she termed "unethical" conduct. Moreover, the respondent suggested to her clients that any motion to remedy the default judgment would "be in front of the same judge, so you may not get a fair hearing."

Before the panel, and upon addressing this court, the respondent expressed her disbelief and amazement at not being granted a continuance by the court. In the respondent's mind, "hospital tests" should have been enough, without more, to obtain the continuance. The respondent overlooks the fact that the communication to the court and counsel was a lie. Moreover, the trial court, in a well-reasoned ruling from the bench, proceeded to grant a default judgment without the presence of the respondent or her clients.

The respondent's clients were required to obtain the services of another attorney in Manhattan to address their needs with reference to the default judgment entered against them. While there is little evidence of record to suggest the extent of the harm to the respondent's clients based on her conduct, it is clear to us that her clients were in fact prejudiced by reason of her failure to appear at trial.

The respondent's actions were intentional. The respondent lied to the court, misrepresented her failure to appear, and lied to her clients concerning the reasons for not appearing. The respondent blamed the court and opposing counsel for "outrageous conduct" and accused the court and counsel of unethical conduct. We believe that the actions of the respondent go to the very heart of her professional responsibility in dealing with clients, the court and opposing counsel, and the public. The panel concluded that the actions of the respondent throughout her representation in this case violated MRPC 1.1 (1993 Kan. Ct. R. Annot. 258), MRPC 1.3 (1993 Kan. Ct. R. Annot. 263), MRPC 1.4 (1993 Kan. Ct. R. Annot. 267), MRPC 3.3 (1993 Kan. Ct. R. Annot. 314), MRPC 3.4 (1993 Kan. Ct. R. Annot. 318), MRPC 3.5(d) (1993 Kan. Ct. R. Annot. 320), MRPC 4.1 (1993 Kan. Ct. R. Annot. 327), MRPC 8.2 (1993 Kan. Ct. R. Annot. 345), and MRPC

8.4(c), (d) (1993 Kan. Ct. R. Annot. 347). These violations involve competence; diligence; communication; candor; disobedience to a court; conduct degrading to a tribunal; truthfulness; false statements regarding a judge's integrity; and conduct involving dishonesty, fraud, deceit, or misrepresentation. Under the circumstances, the court concludes that the appropriate sanction for the above violations is suspension from the practice of law in Kansas for a period of one year.

IT IS THEREFORE ORDERED that the respondent, Dorothy Gershater, be suspended from the practice of law in the State of Kansas for a period of one year.

IT IS FURTHER ORDERED that the respondent comply with the provisions of Supreme Court Rule 218 (1993 Kan. Ct. R. Annot. 187).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and the costs of this action be assessed to the respondent.